**Kelly v. Young Galvanizing, Inc.**

C.P. of Lawrence County, No. 10480 of 2012, C.A.

*Peter D. Friday*, for plaintiffs.
*Bruce E. Rende*, for defendants.

MOTTO, *P.J.*, Sept. 16, 2014—Before the court for disposition is the motion for summary judgment filed on behalf of defendant Young Galvanizing, Inc. (hereinafter "Young"), which argues that Young is not vicariously liable for plaintiff's injuries because plaintiff is barred from recovery pursuant to the doctrine of assumption of the risk.

This action arises from a fall from a tractor trailer which occurred when plaintiff, Samuel J. Kelly, being concerned with the stability of a load his trailer, climbed onto the back portion of his trailer to inspect and secure the load. Plaintiff has been employed as a truck driver for 25 years and worked under a leasing contract with Mercer Trucking from 2000 up to the date of the accident. On November 16, 2010, at about 1:00 p.m., plaintiff drove his tractor trailer to the business premises of Young to

pick up a load consisting of wooden posts and metal guardrails. According to the complaint, when plaintiff arrived at Young's business premises he briefly spoke with the shipping supervisor for Young to verify the load he was to pick up. The shipping supervisor for Young directed plaintiff to drive his truck to the loading area and to wait inside his truck while the load of guardrails was loaded onto his truck. Two employees of Young came toward plaintiff's truck with a forklift and loaded the guardrails onto the trailer. Subsequently, plaintiff exited his truck and walked toward the trailer to observe the loaded guardrails. Upon observing the load from where he stood on the ground next to the trailer, plaintiff became concerned with the stability of a curved guardrail section which was 12 feet in length and which was placed on the top of the load on the trailer. Plaintiff first walked toward the section of the trailer closest to the cabin of his truck and threw a strap over the curved guardrail in an attempt to secure it. Upon throwing the strap over the curved guardrail, plaintiff observed that it rocked back and forth. At that point, plaintiff observed that the curved section of the guardrail was unstable so he climbed onto the back side of the trailer to further observe and secure the load. After plaintiff climbed onto the trailer, he walked along a one and one half foot section on the left side of the trailer towards the front until he reached the curved guardrail which gave him cause for concern. Plaintiff noticed that the curved guardrail was not banded to the rest of the load and confirmed that the load was not stable. In an attempt to secure the load, plaintiff climbed the load and placed his hands along the guardrails so that he could get a closer view of the curved guardrail to confirm that it was unstable and not banded to the rest of the load. Upon touching the curved guardrail with his hand it pivoted and impacted the plaintiff, which caused him to fall off the trailer. As a

result of the guardrail pivoting, plaintiff fell backwards off the trailer onto his back on the ground and hit his head on a pallet of steel plates located near the trailer. The plaintiff suffered injuries as a result of his fall.

On June 6, 2012 plaintiff Samuel J. Kelly and his wife, Rhonda Kelly, filed a two count complaint against defendant Young, alleging negligence-vicarious liability (Count I) and a claim for loss of consortium (Count II). In the complaint, plaintiff contends his injures are a direct and proximate result of the negligence and carelessness of Young's employees in loading the metal guardrails onto plaintiff's trailer in an improper fashion.

Young has now filed this motion for summary judgment arguing that it cannot be held liable under a theory of vicarious liability because plaintiff knowingly and voluntarily assumed the specific risk of his own injuries and there was no recognizable duty owed to plaintiff by Young; therefore, plaintiff is barred from recovery against Young pursuant to the doctrine of assumption of the risk.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa. Super. 2000). Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2.

Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando Erie Ceramic Art Co.*, 764 A.2d 59, 61 (Pa. Super. 2000)(citing *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-651 (Pa. Super. 1999)). A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Silicones, Inc.*, 756 A.2d 697 (Pa. Super. 2000).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm Inc.*, 563 Pa. 501, 752 A.2d 339 (2000); *Dean v. Commonwealth Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999); *Basile v. H&R Block*, 761 A.2d 1115 (Pa. Super. 2001); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa. Super. 2000); *Stevens Painton Corporation v. First State Insurance Company*, 746 A.2d 649 (Pa. Super. 2000).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Basile, supra.* If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment

may be granted. *Dudley v. USX Corporation*, 414 Pa. Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa. Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore*, 152 Pa. Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa. Cmwlth. 494, 579 A.2d 1358 (1990).

It is well settled in Pennsylvania that the doctrine of assumption of the risk is a viable defense to a cause of action sounding in negligence. *Whitley v. Philadelphia Transportation Co.*, 211 Pa. Super. 288, 234 A.2d 922 (1967). Under the doctrine of assumption of the risk, a defendant is relieved of its duty to protect a plaintiff where the plaintiff has voluntarily and deliberately proceeded to face a known and obvious risk and therefore is considered to have assumed the liability for his own injuries. The Pennsylvania Supreme Court has on occasion affirmed a lower court's decision that as a matter of law, a plaintiff voluntarily proceeded in the face of a known risk and absolved the defendant from responsibility for the injuries sustained. *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993). However, the determination that the plaintiff has assumed the risk of his injuries such that recovery is prevented should occur only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition. *Struble v. Valley Forge Military Academy*, 445 Pa. Super. 224, 665

A.2d 4 (1995) citing *Long v. Norriton Hydraulics, Inc.*, 443 Pa. Super. 532, 662 A.2d 1089 (1995). The crux of the assumption of the risk defense centers on whether, before a plaintiff suffered injury, he intelligently acquiesced in a known danger and abandoned his right to complain, but afterwards, seeks to assert the claim he had waived. *Handshschuh v. Albert Development*, 393 Pa. Super. 444, 574 A.2d 693 (1990). Pursuant to the Restatement (Second) of Torts, §496D, the basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore, he will not be found, in the absence of an express agreement, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character and extent which make it unreasonable. The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. Restatement (Second) of Torts §496D.

In recent decisions, the assumption of the risk doctrine has been applied narrowly as it is a drastic measure to find that despite the possible presence of negligence, the plaintiff should be estopped from holding that party liable because the plaintiff's actions are such that they are viewed as having abandoned any right to complain. Thus, there is a reluctance to find assumption of the risk applicable unless it is quite clear that the specific risk that occasioned injury was both fully appreciated and voluntarily accepted. In order for the doctrine of assumption of the risk to apply the risk must be perceived and the risk must be faced voluntarily. *Barrett v. Fredavid Builders. Inc.*, 454 Pa. Super. 162, 685 A.2d 129 (1996).

In *Bullman v. Giuntoli*, 761 A.2d 566 (Pa. Super. 2000), the court set forth the factors to be considered for granting

summary judgment on the basis of assumption of the risk. The court stated that in order to grant summary judgment of the basis of assumption of the risk:

> it must first be concluded, as a matter of law, that the party consciously appreciated the risk that attended a certain endeavor, assumed the risk of injury by engaging in the endeavor despite the appreciation of the risk involved and that the injury sustained was, in fact, the same risk of injury that was appreciated and assumed... Even if it is assumed that there is an assumption of the risk component to one's actions, it does not necessarily follow that any type of injury suffered in that endeavor becomes immune from suit. Logically speaking, the injury sustained must be the result of the same risk appreciated and assumed.

*Id.* at 573.

In *Bullman,* the plaintiff entered the home of an acquaintance, which was under construction, by traversing a plank approximately one foot wide. *Id.* The plank bridged an open ditch of six to eight feet and reached over an unfinished porch area that was covered with insulation boards. Plaintiff began to enter the house by stepping onto the board and began crossing the board towards the entrance to the house. Plaintiff safely traversed the excavation ditch and was over the unfinished porch area when the board moved causing her to lose her balance. As she lost her balance she stepped onto the flooring of the porch in an effort to regain stability but the insulation board was not able to sustain her weight and she fell though the insulation board into the basement. As a result of the fall plaintiff sustained severe injuries. *Id.* Plaintiff filed suit alleging a cause of action in negligence. Defendant filed a motion for summary judgment asserting that plaintiff voluntarily assumed the risk of the injury sustained. The

trial court granted defendant's motion on the basis of assumption of the risk. Plaintiff appealed.

The Pennsylvania Superior Court overturned the trial court's decision to grant summary judgment on the basis of assumption of the risk because the risk that plaintiff assumed was limited to the risk that she might naturally lose her balance while crossing the plank and fall into the excavation ditch. The excavation ditch was an open and obvious and the peril of crossing a one foot wide plank is well understood by all individuals of adult age. *Id.* at 573. However, plaintiff's testimony indicated that she had no appreciate of a risk of falling through what proved to be insulation board covering the porch. Her testimony indicated that she observed the porch area to be covered with what she thought was wood. Thus, considering the knowledge in her possession, plaintiff could only be found to have assumed the risk of falling into the excavation ditch. Once she safely traversed that section, the risk she had assumed had ended. Despite the fact that there were other obvious perils still around her, they were not fully appreciated and thus they could not be voluntary assumed. *Id.* at 573-574. Since the assumption of the risk required a subjective appreciation of risk, plaintiff could not have assumed the risk that she did not ascertain, even if the injury actually sustained is similar to the risk assumed. Thus, the court found that the granting of summary judgment on the basis of the assumption of the risk doctrine was in error. *Id.*

Similarly, in *Struble v. Valley Forge Military Academy*, 445 Pa. Super. 224, 665 A.2d 4 (1995), the issue was whether a student of the academy, who was injured when a ceremonial cannon loaded with blanks discharged while the student was located in front and slightly to the side of the cannon's mouth, fully appreciated and accepted the

risks of his actions. The court found that an assumption of the risk defense was not supported by the facts despite the student's testimony that he was aware that he should not stand in front of the cannon while he was being discharged and that the student himself was the one who caused the cannon to discharge when he pulled on the lanyard attempting to dislodge it. *Id.* at 572, 665 A.2d at 7. In reaching this conclusion the court concentrated on the fact that the student had indicated that he was unaware that the cannon being loaded with blanks could cause the type of injury he sustained and also that the cannon had always required considerably more pressure upon the lanyard to discharge it than the student had applied that day. *Id.*

Moreover, the Pennsylvania Superior Court in *Barrett v. Fredavid Builders, Inc., supra.,* reversed the finding of assumption of the risk where an installation installer working on two foot stilts slipped on a discarded piece of vinyl siding. Vital to the decision was the fact that the plaintiff did not see the specific piece of vinyl siding which he stepped on and caused him to fall. *Id.* 454 Pa. Super. at 167, 985 A.2d at 131. The court reasoned that the mere fact one engages in an activity that has some inherent danger does not mean that one cannot recover from a negligent party when injury is subsequently sustained. Plaintiff clearly had an appreciation of a certain amount of risk in the venture. Working on stilts certainly is more dangerous than working while standing on firm ground. Additionally, he had taken time to clear a path where he would be working from debris in order to prevent an accident. However, the appreciation of a general risk was not sufficient to prevent the case from going to the jury. *Id.*

Similarly, in *Long v. Norriton Hydraulics, Inc.,* 443 Pa. Super. 532, 662 A.2d 1089 (1995), the Pennsylvania Superior Court reversed an order granting summary

judgment in favor of several defendants on the basis of assumption of the risk. A worker was injured when he slipped on hydraulic fluid and fell while trying to avoid being struck by a hydraulic lift that suddenly shifted downward towards him. in its motion for summary judgment on the basis of assumption of the risk, defendant cited to the fact that the hydraulic lifts had "shifted" quite a few times and also that the lifts had been leaking hydraulic fluid for some time and that plaintiff was aware of both of these facts. The court found that the evidence did not establish the essential elements of the assumption of the risk doctrine, namely that the risk of injury from the transaction that actually took place was so immediately apparent as to be equivalent to an appreciation and acceptance of that risk and a relinquishment of the right to complain. *Id.* at 537, 662 A.2d 1091.

A similar result was reached in *Handschuh v. Albert Development*, 393 Pa. Super. 444, 574 A.2d 693 (1990), where the court upheld a denial of a request for a jury instruction on assumption of the risk in an action involving the death of a plumbing contractor who sustained injuries when a trench in which he was laying pipe collapsed. The court recognized that the plaintiff was cognizant of the general risk of collapsing ditches and it was understood that the particular job would be "delicate." *Id.* at 445, 574 A.2d at 694. Plaintiff's fatal injury occurred when a seam developed in the trench, causing the dirt to collapse and the dirt to hit him causing fatal injuries. The court found that although the job contained a definite element of risk that was appreciated, the risk was not so imminent as to constitute a waiver of the right to complain. Thus, application of assumption of the risk was not implicated. *Id.*

In the instant case, Young contends that plaintiff

assumed the risk of falling off the back of his trailer when he made the decision to step up on to the flatbed and inspect and secure the unsteady guardrail. Young contends that plaintiffs' deposition testimony establishes all of the following: (1) while standing on the ground plaintiff observed that the curved guardrail which had been loaded onto his trailer was unstable; (2) plaintiff failed to contact any employee, agent or servant from Young upon observing the unstable guardrail pursuant to the safety protocol he was to follow; (3) plaintiff proceeded to climb onto his trailer despite knowing at that time that such conduct was risky and contrary to the safety protocol he was to follow; (4) plaintiff walked toward the unstable guardrail located at the front of his trailer despite knowing that such conduct created a fall risk given his training and prior fall of 2004; (5) upon observing, again, that the curved guardrail in question was unstable, plaintiff did not climb down from his trailer to notify employees, servants or agents of Young as he was required to pursuant to safety protocol; (6) plaintiff proceeded to climb on the load and observed that the curved guardrail was indeed unstable; (7) upon confirming that the guardrail was, in fact, unstable, plaintiff did not get off his trailer to notify Young's agents; and (8) plaintiff proceeded in the face of danger to touch the unstable curved guardrail which caused him to fall.

Young contends that on the day of the incident plaintiff was subjectively aware of and had knowledge of a known risk and proceeded in the face of this risk contrary to the safety protocols put in place by Mercer trucking company prior to plaintiffs' fall. Young contends that plaintiff's duties and responsibilities as a tractor trailer operator included driving his truck, supervising the loading and unloading of material onto his truck and performing maintenance on his truck. Upon working with Mercer Trucking, plaintiff

was required to complete a training which instructed him as to Mercer Trucking's safety policy regarding the loading and unload of material on flatbed trucks as well as other safety precautions. Plaintiff completed the safety orientation classes on an annual basis between 2000 and 2010 at Mercer Trucking's principal place of business.

Plaintiff testified that he was required to follow Mercer Trucking's safety protocol on the date of the incident. Specifically, whenever plaintiff arrived at a business establishment to pick up a load of material he was required to meet with someone at the establishment and then properly position his truck for the load and complete all the necessary paperwork. With regard to heavy material loads, plaintiff was required to direct the agents or employees of each business where each load was to be placed on plaintiff's truck to ensure proper weight distribution. During the loading process, plaintiff acknowledged that he was fully aware of the risks involved during the loading and securing of material onto his tractor trailer. Additionally, plaintiff acknowledged that during the loading process for each trucking run plaintiff was required to stand at a safe distance and observe the material being loaded onto his trailer. Plaintiff acknowledged that he was to required to oversee the loading process and inform the business establishments' employees or agents to move the material if plaintiff believed the material was loaded in an unstable manner onto his trailer.

In his deposition testimony, plaintiff acknowledged that Mercer Trucking's safety protocol on November 16, 2010 required him to observe whether the load of guardrails was unstable and then immediately inform Young's employees if he believed the load was unstable. Plaintiff also acknowledged that Mercer Trucking's safety protocol further required him to never step onto his trailer

if he believed the load of guardrails was unstable. Young argues that plaintiff was fully aware of the risks involved with the loading of guardrails as he had been involved in a prior fall from his trailer in 2004 when he attempted to secure an unstable load of pipe at a job site by himself which caused him to fall off the back of his trailer and sustain injuries.

Young contends the facts of this case are analogous to the case *Metzger v. Yale Material Handling Corp*, 6 Pa.D.& C.4th 289 (Pa. Com. Pl. 1989), which applied the doctrine of assumption of the risk in dismissing a plaintiff truck driver's negligence claim. In *Metzger*, plaintiff was a forklift driver who sustained injuries while he attempted to move a load which had been placed on a forklift. At the time of his injury plaintiff was unloading a pallet with a load on it. While unloading the pallet, forks were placed under the pallet and the load shifted, requiring plaintiff to climb up on the forks to adjust the load. While standing on the forks the right fork shifted and caused plaintiff to fall from the forklift. Plaintiff commenced causes of action in negligence and strict liability. *Id.* at 290. During plaintiff's deposition, he acknowledged that prior to the accident he had operated a forklift daily for four years and knew the forked he was operating on the day he fell had a warning decal on the mast of the forklift which specifically cautioned against standing on the forks. Moreover, plaintiff testified that he "knew better" than to stand on the forks. *Id.* at 291.

Consequently, defendant argued that plaintiff was barred from recovery because he voluntarily assumed the risk of injury. *Id.* in response, plaintiff argued that the only risk of injury, if any, he assumed was that he might slip off the forks to the ground. Plaintiff contended that he did not assume the risk of the defective design of the

forklift allowing an allegedly secure fork to move laterally off the forklift; therefore, assumption of the risk was not a defense because he was not warned of the possibility of sudden lateral displacement. The court in *Metzger* found that plaintiff was barred from recovery due to his assumption of the risk. The court found:

> Although the plaintiff in this case did not realize the specific defect of lateral displacement, he knew that there was danger involved in standing on the forks. He was warned not to stand on the forks. We find that plaintiff's knowledge of the danger is enough for assumption of the risk to bar his recovery.

*Id.* at 293.

Young contends *Metzger* is analogous to the instant case because the plaintiff in *Metzger* openly agreed that he had proceeded in the face of a known danger just as the plaintiff in this case acknowledged he was aware of the prescribed safety protocol and still made the decision to climb onto the back of his trailer and touch the unstable load. Just as in *Metzger*, the plaintiff in this case acknowledged that based upon the explicit safety protocol he was to follow, as well as his prior experience as a truck driver, that he was never to stand on his trailer to attempt to correct a load which he believed to be unstable.

Young contends based on plaintiff's testimony there is no genuine issue of material fact that plaintiff appreciated the risk of the unstable load and failed to follow the prescribed safety protocol to remedy the situation and then proceeded in the face of such danger without notifying anyone from Young and touched the unstable guardrail which caused him to fall. Thus, plaintiff's testimony establishes that he appreciated and voluntarily assumed the risk of the injury he sustained by climbing onto the back of his trailer and

touching the unstable guardrail. Therefore, similar to the court's holding in *Metzger*, this court should hold that plaintiff is barred from recovery against Young based upon the assumption of the risk doctrine.

In response to Young's motion for summary judgment, plaintiff contends that he did not appreciate the specific risk of the curved guardrail falling, therefore, summary judgment is not appropriate as there is a question of material fact on the issue of his assumption of the risk. Plaintiff testified at his deposition:

Q: You proceeded to move forward and attempted to touch the guardrail?

A: To see what I had to do to get it secure.

Q: Even though you knew the risks involved at that point?

A: I didn't know it was going to slip like that. If I thought that was a possibility-I never thought-I hadn't hauled curved [guardrails] like that. I didn't realize they were so unstable like that. They are very unstable. I have been real cautious since then, because that is a lesson learned. It should have never been placed on there to begin with like that.

\*\*\*

Q: As you said previously in your experience as a truck driver, you understood that unstable loads on your flatbed were risk?

A: Yes.

Q: You understand that they had the possibility of moving or falling off the flatbed truck, I take it?

A: Well, when they moved like that, maybe I guess there was a possibility of it falling. I didn't really think it was going to fall. I thought there would be a band. A lot of times they band the metal like that. It will still move but its okay. I wanted to see if it was banded or not.

(Plaintiff's deposition testimony, 1/16/04, pgs.85-86.)

Plaintiff argues that because he was not aware of the specific risks involved in attempting to secure the curved guardrail on his trailer it cannot be said as a matter of law that he assumed the risk of the curved guardrail moving and causing him to fall off the trailer. While the plaintiff stated that he was aware that unstable loads on flatbeds were a risk, he was unaware of the specific risk of a piece of curved guardrail moving and knocking him off the trailer.

In *Struble v. Valley Forge Military Academy, Supra.*, the court found there was no assumption of the risk when a student indicated he was unaware that the cannon being loaded with blanks could cause the type of injury sustained and also that the cannon had always required considerably more pressure upon the lanyard to discharge it than the student had applied that day. *Id.* The court reasoned that the student did not assume the specific risk of the cannon discharging even though he was aware that he should not stand in front of the cannon while it was being discharged. *Id.* 445 Pa. Super. at 227, 665 A.2d at 5. Here, like in *Struble*, the plaintiff contends he was aware of the general risk of standing on flatbeds, but unaware of the specific risk involved in attempting to secure the curved guardrail.

The court finds before the doctrine of assumption of the risk can be applied to prevent recovery, the evidence must establish conclusively that plaintiff was subjectively

aware of the risk. Here, plaintiff was in the course and scope of his employment as a truck driver when he fell from the flatbed. Furthermore, plaintiff contends that part of his duties as a truck driver is to strap down the load. Plaintiff stated in his deposition:

Q: You would agree with me as you stood three there was risk involved with regard to the loading of those guardrails on your flatbed truck on that date?

A: Always is a risk.

Q: Even though you knew it was unstable you decided to get on the flatbed truck yourself?

A: It is my responsibility to made sure they are secure, yes. I had to get up to make sure that it was, you know, in that it was secure enough to strap. You can't have anything moving like that, or it will cut the strap and you will lose the load. If you strap it like that and it doesn't fall off then, going down the road you lose the whole thing. You have to make sure they are stable.

(Plaintiff's deposition testimony, 1/16/04, p. 87.)

Where an employee is required to encounter a risk in order to perform his job, reasonable minds could disagree as to whether the employee deliberately and with awareness of the specific risk inherent in the activity nonetheless engaged in the activity that produced the injury. *See Staub v. Toy Factory, Inc.*, 749, A.2d 522, 530 (Pa. Super. 2000). Because plaintiff's duties as a truck driver involve an inherent risk, reasonable minds could differ as to whether the plaintiff deliberately and with awareness encountered the specific risks involved. *Id.* at 529-530. *See also Handschuh v. Albert Development*, Supra. 393 Pa. Super. at 447, 574 A.2d at 696 (finding that although plaintiff's job contained a definite element

of risk that was recognized, the risk was not so impending as to constitute a waiver of the right to complain).

In the instant case, plaintiff could not see nor appreciate the specific risk of attempting to secure the curved guardrail until it was too late. Plaintiff stated that part of his job duties included making sure the load was stable before placing straps over the load to secure it. According to plaintiff, it is common practice in the trucking industry for guardrails to be held down by steel bands when they are loaded onto a truck. Plaintiff stated that he climbed up onto the flatbed to ascertain whether the guardrail was held down by metal bands before he put the straps on to secure the load. Just as the plaintiff in *Barrett v. Fredavid Builders, Inc., Supra.* 454 Pa. Super. at 167, 685 A.2d at 131, did not see not appreciate the specific risk of the vinyl siding on the ground, the plaintiff here did not see nor appreciate the potential harm the totally unsecured guardrail imposed. Plaintiff testified that he was not aware the guardrail was not secured before he stepped up onto the flatbed truck. Because the assumption of the risk defense requires a subjective appreciate of the risk, a plaintiff cannot be said to assume a risk they did not know existed.

Moreover, the court finds that the decision in *Metzger* is not binding on this court because central to the court's reasoning in *Metzger* was that the plaintiff stated that he was previously warned about and was aware of the danger in standing on the forks. *Id.* 6 Pa.D.& C.4th at 293. Here, plaintiff stated that he was unaware that the guardrails were not banded together when he stepped onto the flatbed and that this was his first time hauling a load with curved guardrail. Additionally, plaintiff testified that it was part of his job duties to make sure a load was secure and strapped down before leaving business. In *Metzger*, the forklift driver testified that he was previously warned

not to stand on the forks, unlike here where the plaintiff testified that he was never warned of the specific dangers of hauling curved guardrail and it was part of his job duties to secure and strap down a load before leaving a facility. *See Id.* at 293. Thus, this court cannot find as a matter of law that plaintiff is barred from recovery against Young based upon the assumption of the risk doctrine. Whether plaintiff's actions and thoughts were reasonable involve negligence principles for the jury to resolve.

For the foregoing reasons, defendant Young Galvanizing Inc.'s motion for summary judgment on the issue of plaintiff's assumption of the risk is denied.

### ORDER OF COURT

And now, this 16th day of September, 2014, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered, adjudged and decreed that the motion for summary judgment of defendant, Young Galvanizing, Inc., is denied.